```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
```

COIN AUTOMATIC LAUNDRY EQUIPMENT
COMPANY,                                :

    Plaintiff,                      :

v.                                      :
                                                  Civil Action No. GLR-16-0695
HAMPTON PLAZA, LLLP,                    :

    Defendant.                      :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Hampton Plaza, LLLP's ("Hampton Plaza") Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 8). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant in part and deny in part the Motion.

### I.   BACKGROUND[1]

Plaintiff Coin Automatic Laundry Equipment Company ("CALECO") entered into a commercial lease agreement with Hampton Plaza ("CALECO Lease") on April 13, 2009 to lease space to allow CALECO to install and service laundry equipment at Hampton Plaza. (Compl. ¶ 7, ECF No. 1). The CALECO Lease began on May 13, 2009 for a six-year term. (Compl. Ex. A ¶ 1, ECF No. 1-1). The CALECO Lease automatically renews with the same terms

---

[1] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

and conditions unless a party terminates the lease with ninety days written notice. (Id. ¶ 7). The CALECO Lease required a monthly rent of sixty-percent of CALECO's revenue collected during the month and required the laundry equipment to remain CALECO property. (Id. ¶¶ 2, 4). The CALECO Lease also contained a right of first refusal ("ROFR") provision: [CALECO] "shall have a right of refusal to continue to lease space to provide laundry services on the same terms as any bona fide bid received by [Hampton Plaza], if this [CALECO] Lease is not renewed." (Id. ¶ 8).

On April 15, 2015, Hampton Plaza provided CALECO written notice of its termination of the CALECO Lease. (Compl. Ex. B, ECF No. 1-2). Two days later, CALECO advised Hampton Plaza, in writing, that it intended to exercise the ROFR provision. (Compl. Ex. C, ECF No. 1-3). CALECO requested that Hampton Plaza provide copies of any bona fide bids for laundry services or commercial laundry equipment purchases Hampton Plaza received. (Id.). CALECO alleges Hampton Plaza never provided any bids, contracts, or other documents in April, May, or June 2015. (See Compl. ¶ 14). Instead, on July 16, 2016 Hampton Plaza allegedly executed a new lease ("C&G Lease") with Caldwell & Gregory ("C&G"), CALECO's competitor, to provide laundry services. (Pl.'s Opp. Def.'s Mot. Dismiss Alt. Summ. J. ["Pl.'s

2

Opp."] Ex. A, ECF No. 13-1).[2] In the C&G Lease, Hampton Plaza leased "all current and future laundry areas within the premises" to C&G for the purpose of installing and maintaining washers and dryers. (Id.). C&G allegedly signed the C&G Lease a day later, on July 17, 2015. (Id.).

On July 21, 2015, Rachel Smith, building manager with Hampton Plaza, advised CALECO that she never received a new proposal for laundry services from CALECO, Hampton Plaza "signed a contract with another vendor," and the CALECO Lease will continue on a month-to-month basis. (Compl. Ex. E, ECF No. 1-5). On July 22, 2015, CALECO again informed Hampton Plaza that it intended on exercising its rights under the ROFR provision. (Compl. Ex. F, ECF No. 1-6). Hampton Plaza failed to provide any bids, contracts, or other documents to CALECO in July, August, or September 2015, despite continuing requests. (See Compl. ¶ 14). On October 2, 2015, Hampton Plaza, in writing, terminated the CALECO Lease. (Compl. Ex. I, ECF No. 1-9).

---

[2] At this stage in the litigation, the Court may consider documents referred to and relied upon in the Complaint, "even if the documents are not attached as exhibits." Coulibaly v. J.P. Morgan Chase Bank, N.A., No. DKC 10-3517, 2011 WL 3476994, at *6 (D.Md. Aug. 8, 2011) (quoting Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001) (internal quotation marks omitted). Here, the Complaint alleges that "Hampton [Plaza] signed a new contract with C&G without providing CALECO with the bona fide bid from that vendor." (Compl. ¶ 30). Accordingly, because the Complaint refers to, and relies on, the C&G Lease, the Court will consider it at this stage.

Hampton Plaza's letter advised CALECO that Hampton Plaza decided to purchase its own laundry equipment and as a result, "there are no lease terms to match" under the ROFR provision. (Id.).

On October 22, 2015, Hampton Plaza and C&G allegedly executed an "Addendum" to the C&G Lease that terminated the original C&G Lease ("Termination Addendum"). (Pl.'s Opp. Ex B, ECF No. 13-1). That same day, Hampton Plaza and C&G executed a Sales Order Form and Service and Collection Contract (collectively, the "C&G Purchase Agreement"). (Def.'s Mot. Dismiss Alt. Summ. J. (hereinafter "Def.'s Mot. Dismiss") Ex. 3, ECF No. 8-5).[3] Under the Sales Order Form, Hampton Plaza purchased washers, dryers, and other laundry equipment from C&G. (Id.). Under the Service and Collection Contract, Hampton Plaza agreed to pay C&G a monthly fee to service and maintain the laundry equipment Hampton Plaza purchased. (Id.). On November 11, 2015, Hampton Plaza disconnected CALECO's laundry equipment and removed it from Hampton Plaza's property. (Compl. ¶ 28).

On March 8, 2016, CALECO sued Hampton Plaza, raising one claim for breach of contract. (Compl. ¶¶ 32-36). Specifically, CALECO alleges Hampton Plaza violated the ROFR provision when it

---

[3] The Complaint alleges that "Hampton [Plaza] attempted to re-characterize the new agreement as an arrangement that would not run afoul of the existing [CALECO] Lease." (Compl. ¶ 30). Because the Complaint refers to, and relies on, the C&G Purchase Agreement, the Court will consider it at this stage. See note 2 supra.

4

signed the C&G Lease because Hampton Plaza never provided CALECO with C&G's bona fide bid.  (See Compl. ¶ 30).  CALECO further alleges Hampton Plaza violated the CALECO Lease when it signed the C&G Purchase Agreement because the agreement was "meant to circumvent CALECO's [ROFR provision]."  (Compl. ¶ 34(c)).  CALECO asserts Hampton Plaza withheld bona fide offers from CALECO and executed the C&G Purchase Agreement in bad faith.  (Compl. ¶ 34(g)).  Finally, CALECO alleges Hampton Plaza disconnected and removed CALECO's laundry equipment in violation of the CALECO Lease.  (Compl. ¶ 34(e)).  On May 9, 2016, Hampton Plaza filed a Motion to Dismiss, or in the Alternative, for Summary Judgment.  (ECF No. 8).  CALECO filed a Response on June 10, 2016, (ECF No. 13), and Hampton Plaza filed a Reply on July 8, 2016 (ECF No. 16).

## II.  DISCUSSION

### A.  Standards of Review

#### 1.   Conversion to Summary Judgment

As a threshold matter, the Court must determine how to construe the Motion.  Hampton Plaza styles its Motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d).  See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd

5

sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). Here, Hampton Plaza captions its Motion as one for

6

summary judgment "in the alternative," and submitted an affidavit and other materials outside the pleadings for the court's consideration. (Def.'s Mot. Dismiss Exs. 1, 2, 4-6, ECF Nos. 8-2, 8-3, 8-5 through 8-8). Thus, the Court concludes that Hampton met the notice requirement.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). To sufficiently establish that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d) explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Importantly, "Rule 56(d) affidavits may not demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" Gardner v. United States, No. JKB-15-2874, 2016 WL 2594826, at *4 (D.Md. May 4, 2016) (quoting Strag v. Bd. of Trs., 55 F.3d 943, 954 (4th Cir. 1995)).

Here, Hampton Plaza submitted an affidavit from Smith describing events related to the CALECO Lease, C&G Lease, and C&G Purchase Agreement. (Def.'s Mot. Dismiss Ex. 1, ECF No. 8-3). Smith states all of her actions and decisions were made in

good faith. (Id. ¶ 10). In response, CALECO submitted a Rule 56(d) affidavit from Mark A. Schiavo, Esq., an attorney for CALECO. (Pl.'s Opp. Ex. B, ECF No. 13-2). In his affidavit, Schiavo explains that CALECO seeks discovery regarding Smith's "reasons, motives, and intentions behind her actions" related to the ROFR provision, the C&G Lease, and the Termination Addendum. (Id. ¶¶ 3, 5). Because the discovery CALECO seeks relates to whether Hampton Plaza withheld bona fide bids in violation of the ROFR provision,[4] the Court concludes the discovery CALECO seeks could lead to the creation of "a genuine issue of material fact sufficient to defeat summary judgment.'" Gardner, 2016 WL 2594826, at *4 (quoting Strag, 55 F.3d at 954). Accordingly, the Court will construe Hampton Plaza's Motion as a motion to dismiss under Rule 12(b)(6).

### 2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178

---

[4] As the Court will explain below, however, whether Hampton Plaza entered into the C&G Purchase Agreement in bad faith is not relevant because the ROFR provision relates to matching a monthly rental agreement, not a circumstance where Hampton purchases the laundry equipment and takes control of the laundry services, as is the case with the C&G Purchase Agreement. Accordingly, the Court is only referring to bona fide bids related to the alleged C&G Lease, not the C&G Purchase Agreement.

8

F.3d 231, 243-44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver,

9

510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.  Analysis**

**1.  The Scope of the ROFR Provision**

**i.  The C&G Purchase Agreement**

Hampton Plaza first argues that the ROFR provision is inapplicable to the C&G Purchase Agreement because under the Agreement, Hampton Plaza purchases the laundry equipment and operates the laundry services themselves. CALECO's allegations appear to concede that the terms of the ROFR provision do not apply to the C&G Purchase Agreement. CALECO only alleges that the C&G Purchase Agreement was Hampton Plaza's attempt to "not run afoul" of the ROFR provision. (Compl. ¶ 30; see also Pl.'s Opp. at 8 (arguing that the C&G Purchase Agreement was "meant to operate as a lease but serve to circumvent or defeat the ROFR")). Instead, CALECO's allegations focus on Hampton Plaza's intent to design the C&G Purchase Agreement so that it fell outside the ROFR provision, thus violating its duty of good faith and fair dealing. (Compl. ¶ 34(g)). The Court agrees

that the ROFR provision is inapplicable to the C&G Purchase Agreement.

Contracts in Maryland contain an implied duty of good faith and fair dealing. See, e.g., Clancy v. King, 954 A.2d 1092, 1106-07 (Md. 2008). As CALECO indicates, this duty extends to property owners and ROFR holders in land-sale contracts. David A. Bramble, Inc. v. Thomas, 914 A.2d 136, 148-49 (Md. 2007); see Straley v. Osborne, 278 A.2d 64, 70 (Md. 1971) (holding that including the premises of a junkyard that is subject to a ROFR provision with the surrounding land to avoid application of the ROFR would violate the duty of good faith). The duty of good faith and fair dealing, however, does not require parties to take "affirmative actions" that they are "clearly not required to take" under the contract. E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 182 (4th Cir. 2000) (quoting Parker v. Columbia Bank, 604 A.2d 521, 531 (Md.Ct.Spec.App. 1992)) (internal quotation marks omitted). Hence, the duty does not "interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise." Id. at 184. Rather, the only obligations required are ones "inherent in expressed promises." Id.

Here, in the C&G Purchase Agreement, Hampton Plaza purchased laundry equipment from C&G and employed C&G to service and maintain the equipment. (Def.'s Mot. Dismiss Ex. 3). The

11

ROFR provision, however, only gives CALECO a right of first refusal "to continue to lease space to provide laundry services on the same terms as any bona fide bid received" by Hampton Plaza. (Compl. ¶ 11 (emphasis added)). The duty of good faith, therefore, does not "interpose" a "new obligation" on Hampton Plaza to provide CALECO an opportunity to match bids and agreements other than leases -- even if they relate to providing the same laundry services -- because the ROFR provision "is silent" about bids and agreements other than leases. See E. Shore Mkts., 213 F.3d at 184.

Nor is such an obligation "inherent" in the CALECO Lease. See id. In the CALECO Lease, CALECO paid Hampton Plaza a monthly rent of sixty-percent of its monthly revenues, and the laundry equipment remained CALECO's property. (Compl. Ex. A ¶¶ 2, 4). But in the C&G Purchase Agreement, Hampton Plaza is purchasing laundry equipment and employing C&G to service and maintain the equipment. (Def.'s Mot. Dismiss Ex. 3). Thus, Hampton Plaza's continuing obligation to allow CALECO "to continue to lease space" does not inherently encompass an obligation to give CALECO an opportunity to sell and service laundry equipment. (Compl. ¶ 11). Including non-lease agreements that provide laundry services may be, at best, "logical and wise" due to the presence of the ROFR provision, but is not an obligation under the duty of good faith and fair

dealing. See E. Shore Mkts., 213 F.3d at 184. Accordingly, the Court will dismiss CALECO's breach-of-contract claim to the extent CALECO seeks damages for Hampton Plaza's execution of the C&G Purchase Agreement.

### ii. The C&G Lease

Hampton Plaza next argues that CALECO's claim should be dismissed to the extent it seeks damages as a result of the first C&G Lease because Hampton Plaza "mere[ly] contemplate[d]" the C&G Lease and it went "unconsummated." (Def.'s Mot. Dismiss at 13). CALECO argues it sufficiently alleged that Hampton Plaza and C&G consummated the C&G Lease in violation of the ROFR provision. The Court agrees with CALECO.

Hampton Plaza relies on Smith's affidavit to demonstrate that Hampton Plaza and C&G never entered into a valid, binding lease, and therefore never triggered the ROFR provision. (See Def.'s Mot. Dismiss Ex. 1, ¶ 5). Because the Court is construing Hampton Plaza's Motion as a Motion to Dismiss, however, the Court may only consider the Complaint and any documents referred to and relied upon in the Complaint. Coulibaly, 2011 WL 3476994, at *6. The Court must consider the factual allegations in the Complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright, 510 U.S. at 268; Lambeth, 407 F.3d at 268 (citing Scheuer, 416 U.S. at 236).

13

Smith's affidavit aside, CALECO alleges that on April 17, 2015, it sent a letter to Hampton Plaza informing Hampton Plaza that it intended to exercise the ROFR provision and requested copies of any bona fide bids for laundry services. (Compl. Ex. C). CALECO further alleges that Hampton Plaza never provided any bids, contracts, or other documents in response. (Compl. ¶ 14). CALECO asserts that instead, Hampton Plaza signed the C&G Lease. (See Compl. ¶ 30). According to the C&G Lease, Hampton Plaza leased "all current and future laundry areas within the premises" to C&G for the purpose of installing and maintaining washers and dryers. (Pl.'s Opp. Ex. A). The dates next to the C&G Lease's signatures reveal that Hampton Plaza signed the lease on July 16, 2015 and C&G signed it on July 17, 2015. (Id.). Thus, CALECO has sufficiently pled that Hampton Plaza and C&G executed the C&G Lease.

2. **Validity of the ROFR Provision**

Hampton Plaza further argues that the ROFR provision itself is invalid because it constitutes an unreasonable restraint on alienation of property and it violates Maryland's Rule against Perpetuities. CALECO argues neither rule invalidates the ROFR provision. The Court agrees with CALECO.

### i. Rule Against Unreasonable Restraints on Alienation of Property

The rule against unreasonable restraints on alienation of property "prevents grantors from unreasonably depriving grantees of the power to alienate their estates." Ferrero Const. Co. v. Dennis Rourke Corp., 536 A.2d 1137, 1142–43 (Md. 1988). Hampton Plaza relies on Ferrero Construction Co. to support its assertion that the ROFR provision is invalid under the rule. Specifically, Hampton Plaza relies on the Maryland Court of Appeals' holding that "rights of first refusal restrain alienation." Id. at 1144. The Court of Appeals, however, did not hold that rights of first refusal were an unreasonable restraint on alienation of property. The court only held that rights of first refusal were a restraint on alienation of property in rejecting the minority view that the Rule against Perpetuities does not apply to rights of first refusal. See id. at 1143 ("Even if the minority view were correct that an interest should not be subject to the Rule Against Perpetuities unless that interest constitutes a restraint on alienation, we would disagree that rights of first refusal should not be subject to the Rule.").

Hampton Plaza cites no other Maryland authority, and the Court's own exhaustive research reveals none, that applies the rule against unreasonable restraints on alienation of property

15

to a right of first refusal. Maryland courts instead apply the Rule against Perpetuities. See, e.g., Dorado Ltd. P'ship v. Broadneck Dev. Corp., 562 A.2d 757, 759 (Md. 1989) ("In our view, the contract for the sale of the remaining 112 lots violates the Rule Against Perpetuities. Consequently, we do not reach the issues of whether the contract is an unreasonable restraint on alienation or is fatally vague."); The Arundel Corp. v. Marie, 860 A.2d 886, 890 (Md. 2004).[5] Thus, the Court declines to apply the rule against unreasonable restraints on alienation of property to the ROFR provision and will only apply the Rule against Perpetuities.

### ii. The Rule against Perpetuities

Under the common law Rule against Perpetuities, "[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Selig v. State Highway Admin., 861 A.2d 710, 717 (Md. 2004) (quoting John Chipman Gray, The Rule Against Perpetuities, § 201 (4th ed. 1942)) (internal quotation marks

---

[5] The Supreme Court of Vermont has observed that "[c]ourts have divided over" whether preemptive rights, such as rights of first refusal, "should be tested under the rule against perpetuities rather than the common-law rule against unreasonable restraints, and disagree over the extent to which the two rules overlap." SKI, Ltd. v. Mountainside Props., Inc., 114 A.3d 1169, 1178 n.8 (Vt. 2015). The court there cited the Maryland Court of Appeals' decision in Ferrero Construction Co. as an example of a court applying the Rule against Perpetuities over the rule against unreasonable restraints on alienation. Id.

omitted). The Maryland legislature, however, has codified exceptions to the Rule. See generally Md. Code Ann., Est. & Trusts § 11-102 (West 2017). One exception is nondonative property interests created after October 1, 2007 that vest, or are exercised, within seven years of the interest's creation. Id. § 11-102.1(d)(1-2). The statute defines a nondonative property interest as a property interest, such as a right of first refusal, given for consideration. Id. § 11-102.1(a). A right of first refusal vests when the property owner decides to sell his or her property interest. See Bramble, 914 A.2d at 146 (holding that a preemptive right "vests only when the property owner decides to sell" (quoting Ayres v. Townsend, 598 A.2d 470, 474 (Md. 1991))).

Here, the ROFR provision is valid because it is exempted from the Rule against Perpetuities under Section 11-102. The ROFR provision is a nondonative property interest because Hampton Plaza passed the interest to CALECO for the consideration provided in the CALECO Lease. (Compl. Ex. A). The CALECO Lease contained the ROFR provision after 2007 because CALECO and Hampton Plaza executed it in 2009. (Compl. ¶ 7). The ROFR provision vested within seven years because Hampton Plaza and C&G executed the C&G Lease on July 17, 2015, a little

17

over six years later.  (Pl.'s Opp. Ex. A).[6]  The Court concludes, therefore, that CALECO sufficiently pled a valid ROFR provision under Maryland law.

In sum, CALECO sufficiently pleads that the ROFR is valid and that Hampton Plaza executed the C&G Lease in violation of the ROFR.  Accordingly, the Court will deny Hampton Plaza's Motion to the extent it seeks to dismiss CALECO's claims related to the C&G Lease.

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT in part and DENY in part Hampton Plaza's Motion (ECF No. 8).  The Court will GRANT the Motion to the extent CALECO seeks damages for Hampton Plaza's execution of the C&G Purchase Agreement.  The Court will DENY the Motion to the extent CALECO seeks damages for Hampton Plaza's execution of the C&G Lease.  A separate Order follows. Entered this 16th day of February, 2017

/s/
_____
George L. Russell, III
United States District Judge

---

[6] Hampton Plaza argues that it never executed the C&G Lease with C&G.  Because Hampton Plaza solely relies on Smith's affidavit to support this contention, for the reasons the Court described in Section II.B.1.ii supra, at the 12(b)(6) stage the Court only considers the C&G Lease and construes the dates contained therein in the light most favorable to CALECO. Albright, 510 U.S. at 268; Lambeth, 407 F.3d at 268 (citing Scheuer, 416 U.S. at 236).  Thus, at this time the Court construes the C&G Lease as executed on July 17, 2015.